UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| AMBER HENRY, ) | Civil Action No.: 4:20-cv-02464-TER |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| -vs- ) | |
| ) | |
| Kilolo Kijakazi,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an SSI application on January 5, 2017, alleging disability beginning on February 1, 1996. (Tr. 14). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on May 10, 2019, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 14). The Administrative Law Judge (ALJ) issued an unfavorable decision on July 5, 2019, finding that Plaintiff was not disabled within the meaning of

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

the Act. (Tr. 14-23). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review. On June 29, 2020, Plaintiff filed this action. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on May 2, 1991, and was twenty-five years old and the date the application was filed. (Tr. 21). Plaintiff had no past relevant work. Plaintiff alleges disability originally due to schizophrenia, bipolar, depression, dyslexia, and blackouts. (Tr. 97). Relevant records will be addressed under the pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of July 5, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 14-23):

1. The claimant has not engaged in substantial gainful activity since January 5, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: borderline intellectual functioning ("BIF"); schizoaffective disorder; and post-traumatic stress disorder ("PTSD") (20 CFR 416.920( C)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple routine tasks with verbal instructions; jobs with a GED reasoning level of 1; occasional coworker contact; frequent supervisor contact; public contact no more than 10% of workday; no direct customer service work and no fastpaced work; can tolerate occasional changes in workplace and or work methods; can concentrate on, focus and attend to work tasks for at least two hours at a time, before needing a normal break of 15 minutes, or once per day, a 30 minute meal break.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on May 2, 1991 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 5, 2017, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ improperly evaluated Dr. Thompson's opinions. Plaintiff argues the ALJ erred in assessing Plaintiff's "credibility." (ECF No. 14 at 2). Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

### A.   LEGAL FRAMEWORK

#### 1.   The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12

consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**<u>Opinions</u>**

Plaintiff argues the ALJ improperly evaluated Dr. Thompson's opinions.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 416.927(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 416.927(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by

6

the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 416.927(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Dr. Thompson examined Plaintiff on April 5, 2017. Plaintiff left her hood on throughout the interview. (Tr. 286). Plaintiff was cooperative. Plaintiff was accompanied by her mother and her sister. Plaintiff presented with dysphoric mood, tearful affect, and rather whiny soft voice. Borderline cognitive ability was suggested "by way of tasks tapping abstraction." "Cognitive spontaneity was somewhat delayed and memory for recent and remote was only fair due to poor listening and

concentration issues." Plaintiff took one minute to count backwards from ten to one. Plaintiff could not make change from a ten dollar bill for a six dollar purchase. Plaintiff did not appear competent to manage benefits. (Tr. 286). Plaintiff reported crying spells when she messes up. Plaintiff reported seeing a black cat and shadows out of the corner of her eye that disappear when she looks straight; the examiner noted this suggested perceptual distortions rather than hallucinations. (Tr. 287). Plaintiff denied fear when seeing shadows or cat. Plaintiff seemed to be experiencing "fearful" demeanor with "extremely poor stress coping skills." (Tr. 287). Plaintiff reported a history of fearfulness of strangers. (Tr. 287). Plaintiff reported Geodon makes the shadow man and cat more faded but they never went away. Plaintiff reported living with a male roommate. (Tr. 287). "Examinee seemed very motivated to discuss hallucinations, perceptual distortions, to the point that it appeared that she was rather embellishing them, although I do believe that this young woman had some major psychological problems but also appears to be intellectually challenged rather moderately, very hypersensitive and fearful." (Tr. 287). Plaintiff did not know who the psychiatrist she saw was. Plaintiff reported special education. Plaintiff reported she has no friends except her male roommate. Plaintiff plays video games and watches television. Plaintiff told the examiner frequently that she was afraid of people. Plaintiff reported to the examiner that she attended church regularly with her male roommate. (Tr. 287). Plaintiff reported poor sleep and appetite. (Tr. 287). Plaintiff reported never having a job. (Tr. 288). Plaintiff reported she stopped taking Geodon a month before because she could not afford it. Diagnostic impressions were report of schizophrenia, report of bipolar disorder (rule out), and probable borderline cognitive functioning. (Tr. 288). The conclusion was:

> This 25-year-old claimant is very fearful, anxious, and has extremely limited

> understanding of the world, but basic interpersonal relationship nuances, etc. Although there are multiple endorsements of psychopathology, examinee appears to be experiencing a combination of lowered intellect, anxiety, and poor stress coping skills. She is fearful of almost everyone, but interestingly does live with a male roommate and attends church on a regular basis. She claims she does really no chores around the house and leaves this to her male roommate. This examinee is not motivated to seek employment and is extremely dependent with schizoid tendencies. She does not appear competent to manage benefits in her own best interest and I do not believe she could live independently.

(Tr. 288-289).

Dr. Thompson examined Plaintiff on September 25, 2017. Plaintiff was accompanied by her boyfriend. Plaintiff maintained good eye contact and was calm and cooperative. Plaintiff seemed a bit shy. (Tr. 292). Plaintiff presented with a rather tense but withdrawn mood and seemed "quite insecure and unsure of herself." Plaintiff had constricted affect and needed frequent cuing to respond. Plaintiff seemed quite naive. Plaintiff took 45 seconds to count from ten to one. Plaintiff reported she often misunderstood the actions and intentions of others. (Tr. 293). Plaintiff reported hearing whispers. (Tr. 293). "The examinee possesses strong schizoid tendencies that is quite naive, vague." (Tr. 293). "The examinee was quite odd and vague, and it would appear that she is fraught with auditory and visual perceptual distortions and does not understand much about the workings of the world, social interaction, and subtle nuances, often misinterpreting other people's actions and intentions. She did not appear in any acute psychiatric distress." (Tr. 293). At one point in the interview, Plaintiff reported she had no children, later she stated she had a three year old living in Michigan and then stated she was currently pregnant. Plaintiff reported her boyfriend and his mother try to help her learn new chores but she is a slow learner. "She seems quite dependent on others. She will attend church occasionally with her boyfriend and his mother." (Tr. 293). Plaintiff reported she was not taking medication. Plaintiff reported Geodon made her more anxious. (Tr. 294). Diagnostic

impressions were "signs and symptoms of simple schizophrenia," "schizoid personality disorder," and "probable mild-to-borderline mental deficiency." (Tr. 294). Dr. Thompson concluded without specific functional limitations:

> This examinee was quite shy, very naive, and appears to essentially be functioning intellectually very low. If there has been no psychometric or intellectual testing on her, this clinician would suggest formal intellectual testing. She does not appear competent to manage benefits in her own best interest. She vaguely endorses si[ghts] and sounds that appeared to be more related to perceptual distortions and low intellect. Most pervasive features appear to be more related to schizoid personality disorder. No bipolar signs or symptoms were observed, and she did appear to be rational in terms of thoughts or feelings even though she did endorse "auditory or visual hallucinations" that do appear more like perceptual distortions. In any event, she is not capable of managing benefits in her own best interest and is clearly functioning low intellectually. She also was quite dependent, and probably will never be able to live independently. It is interesting that she has never been hospitalized for psychiatric reasons which lends this clinician to suggests more of schizoid tendencies than schizophrenia.

(Tr. 294).

The ALJ gave little weight to consultative examiner Dr. Thompson, Ph.D.:

> I give little weight to Ron Thompson, Ph.D., the claimant's consultative examiner. Dr. Thompson opines that the claimant has low intellectual functioning, anxiety, and poor stress coping skills, with fear of "almost everyone" and inability to manage benefit funds or live independently. Ex. B2F/3-4; B4F/3. None of these provides specific, functional, work-related limitations based on the claimant's mental conditions; rather, they are largely summaries of her symptoms. In addition, Dr. Thompson's statements are inconsistent with the objective evidence noting the claimant lives with other people (Ex. B1F/5, 7) and attends church regularly. Ex. B2F/2. Moreover, the claimant's generally intact mental status exams apart from notations of her nontroubling hallucinations (Ex. B1F/7; B7F/1, 4, 6) do not support Dr. Thompson's statements.

(Tr. 20).

The starting point of the ALJ's analysis is not controlling weight as this was a one time examining consultant, who happen to examine Plaintiff twice. The ALJ provided several reasons for

assigning little weight. First, Dr. Thompson's statements did not provide specific, functional, work-related limitations based on the claimant's mental conditions, which upon a review of the statements they are not specific functional limitations. Second, the ALJ stated the report was largely summaries of symptoms; this is in part true and but one reason of several given by the ALJ. Next, the ALJ found Dr. Thompson's statements inconsistent with the objective evidence noting the claimant lives with other people and attends church regularly. The ALJ cited to Exhibits B1F/5, B1F/7, and B2F/2. Exhibit B1F is mental health clinic treatment notes. Plaintiff reported in December 2016 that she lives with her boyfriend and people as before. She hopes to get a place with her boyfriend and would like to get a car. (Tr. 282). Exam at that visit showed depressed/anxious mood and constricted affect. Plaintiff had intact attention/concentration and memory, good insight/judgment, denied hallucinations, and had calm behavior. (Tr. 282). In February 2017, mental health noted Plaintiff had been evicted and was now living with her boyfriend's aunt. (Tr. 284). Upon exam, Plaintiff had euthymic, anxious mood and appropriate affect. Plaintiff had occasional hallucinations, calm behavior, intact attention/concentration, and average fund of knowledge. (Tr. 284). Exhibit B2F/2 was Plaintiff's report to Dr. Thompson of attending church regularly with her male roommate. (Tr. 287). Further, the ALJ noted Plaintiff had generally intact mental status exams, except for notations of her nontroubling hallucinations. The ALJ cited Exhibits B1F/7; B7F/1, B7F/4, B7F/6. Exhibit B1F/7 exam is summarized above. Exhibit B7F/1 is a November 2018 mental health note. Plaintiff stopped Abilify herself due to irritability. Plaintiff brought her infant child. Plaintiff reported still seeing her shadow man and cat. Plaintiff was told she had tried most every antipsychotic in the modern group of medication. "She continues to live with a male friend who is a stand in dad to her son. This seems to be going well." (Tr. 329). Upon exam, Plaintiff had

11

cooperative attitude, calm behavior, concrete thought process, denied delusions, had hallucinations, euthymic mood, somewhat immature affect, and below average fund of knowledge. (Tr. 329). Exhibit B7F/4 is an August 2018 mental health treatment note where Plaintiff reported being anxious around people and held her head low with little eye contact. "She is generally happy at home with her 10 month old son." Plaintiff lived with a male friend who was a father figure to her son and financially supportive. (Tr. 331). Upon exam, Plaintiff had cooperative attitude, calm behavior, logical thought process, denied hallucinations, euthymic mood, appropriate affect, intact memory, intact attention/concentration, and below average fund of knowledge. (Tr. 332). Exhibit B7F/ 6 is a February 2018 mental health note. Plaintiff reported auditory hallucinations and seeing a shadow cat and man. Plaintiff reported she ignored the hallucinations for the most part or watched television. Plaintiff described her mood as pretty fair. Plaintiff reported her four month old baby improved her mood. Plaintiff reported random infrequent panic triggered by loud noise. (Tr. 333). Plaintiff presented as calm, pleasant, engages easily, and no hallucinations noted. (Tr. 333). Upon exam, Plaintiff had cooperative attitude, calm behavior, logical thought process, denied hallucinations, euthymic mood, appropriate affect, intact memory, intact attention/concentration, fair judgment/insight, and average fund of knowledge. (Tr. 334). Plaintiff did not want Geodon; Latuda was prescribed.

As to Plaintiff's argument that the ALJ should have recontacted Dr. Thompson for specific functional limitations, the record is evident that Dr. Thompson did not provide any specific functional limitations that could be translated into limitations in an RFC determination. An ALJ is only required to seek additional or clarifying information if information in the record, regardless if conflicting, is inadequate to determine whether Plaintiff is disabled. 20 C.F.R. § 416.920b(eff. before

3/27/17). Even if inconsistent evidence is presented, the ALJ has the discretion to make a determination based on the evidence in the record before him. Under § 416.920b, the ALJ is only required to seek additional evidence or clarification if the ALJ cannot reach a conclusion about whether the claimant is disabled. Here, the ALJ did not have to recontact any physician for additional information or clarification because the ALJ had sufficient information to determine the issue of disability in the record before him. The record was fully developed and sufficient for the ALJ to render a disability determination. "Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed." SSR 96-2p.

The ALJ thoroughly considered the 20 C.F.R.§ 416.927(c) factors here. The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Even with some evidence of abnormal findings, the ALJ provided more than a mere scintilla of record support for the weight given to Dr. Thompson's statements. The ALJ complied with the applicable regulations in making clear to a subsequent reviewer the reasons for the findings made. The ALJs decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in assessing Plaintiff's "credibility." (ECF No. 14 at 2). Plaintiff asserts that the ALJ on page16 of her decision found that "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (ECF No. 14 at 27). This is inaccurate.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which

are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ considered Plaintiff's allegations:

> In this case, the claimant alleges and testifies to the following symptoms and limitations: she cannot work around people, with poor communication skills and anxiety attacks. Ex. B3E/1. She testified to memory lapses twice a week, which typically occur under stress, such as being out in public. The claimant also testified to 4-5 panic attacks per day. She does not trust people (Ex. B3E/8), and is schizophrenic, which makes her unable to work under any stress. Ex. B3E/l, 9. The claimant sees shadows and hears "whispers in the night." Ex. B3E/9. She also testified that she sees a cat. She will "black out" and stare into space approximately three times per day. She has trouble remembering to attend to personal hygiene and needs frequent verbal reminders. Ex. B3E/4-5. Additionally, the claimant does not cook, preparing only sandwiches or cereal, and struggles to perform chores. Ex.

> B3E/5. She does not go outside alone and cannot concentrate sufficiently to drive or manage money. Ex. B3E/6. The claimant has a short attention span, and struggles to follow instructions. Ex. B3E/8. She was in special education throughout school and did not graduate high school. Ex. B3E/10. Her mother spends a significant amount of time with the claimant at the claimant's house, helping the claimant care for her young[4] son and providing her with reminders and directions; the claimant stated she is never alone with her son, she is with her mother or her boyfriend at all times. The claimant also testified that she has difficulty reading and writing, needs constant reminders to complete tasks, and that she cannot complete any task without direction from others. She was previously in an abusive relationship and has flashbacks and nightmares from these past traumas.

(Tr. 18-19).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of alleged symptoms were inconsistent with the record evidence. The ALJ then turned to the evidence of record, noting records of Plaintiff reporting that she applied for jobs in 2016 and in endorsing no more than mild paranoia and anxiety, citing Exhibit B1F/1. The ALJ stated: "She reported hearing whispers and seeing 'tiny black dots,' but her mental status examination was otherwise unremarkable," citing to Exhibit B1F/2. (Tr. 19). The ALJ cited to Exhibits B1F/2 and B6F/3 as to Plaintiff refusing to fill prescriptions and follow treatment recommendations even while the provider verified costs and provided coupons. The ALJ considered that Plaintiff attended 13 sessions with 12 absences from August 2018 to March 2019, citing Exhibit B18E/1-2. (Tr. 19). The ALJ questioned Plaintiff as to this inconsistent attendance at the hearing; Plaintiff answered that she has to call the Medicaid bus in order to go and that they do not show most of the time. (Tr. 19, 66). The ALJ noted that Plaintiff did not suggest any significant efforts had been made by her to address the situation. (Tr. 19). The ALJ continued reviewing the record noting mental health treatment and citing exhibits:

---

[4] Plaintiff was pregnant with a third child at the hearing.

> In November 2016, the claimant reported non-command auditory and visual hallucinations as well as mild paranoia, but still had no suicidal ideation, a euthymic mood, good orientation, intact memory and attention, a mild concentration impairment, and intact insight/judgment. Ex. B1F/3-4. She also reported moving in with her boyfriend, who also lived with other people. Ex. B1F/1, 5. Subsequently, she was evicted and moved in with her boyfriend's aunt. Ex. B1F/7. The claimant reports being afraid of people, but still attends church regularly (Ex. B2F/2), and as noted above, has lived with several other people outside of her romantic interests. Her hallucinations were still present into early 2017, along with some paranoia, but the remainder of her mental status exam was normal, with logical thoughts, a euthymic/anxious mood, good orientation, intact memory, intact attention/concentration, and intact insight/judgment. Ex. B1F/7; B7F/1, 4, 6. The claimant still reports seeing a "shadow cat" and "shadow man," and hears voices/whispers (Ex. B7F/1, 3, 5), but stated she mostly ignores these things. Ex. B7F/5. She also reports "infrequent" panic attacks, in contrast to her testimony of multiple panic attacks per day. Ex. B7F/5.

(Tr. 19). The ALJ then considered the two consultative exams. (Tr. 19-20). The ALJ noted the examiner felt Plaintiff had major psychological problems and moderate intellectual challenges but was also embellishing her hallucinations and perceptual distortions. The examiner felt hallucinations were more likely perceptual distortions due to low intellect rather than psychopathy. (Tr. 20). The ALJ concluded by finding the statements about intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the record. (Tr. 20). The ALJ then weighed opinions. (Tr. 20-21).

A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 416.929(eff. before 3/27/17). An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 416.929; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial

17

evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| October 29, 2021<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |